STATE OF NEBRASKA, APPELLEE, V.
BENJAMIN K. JEFFERSON, APPELLANT.
562 N.W.2d 77

Filed April 15, 1997.   No. A-96-536.

Benjamin K. Jefferson, pro se.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

HANNON, SIEVERS, and MUES, Judges.

HANNON, Judge.

Benjamin K. Jefferson appeals from an order of the district court denying his motion for postconviction relief without an evidentiary hearing and refusing to appoint an attorney to represent him in the proceedings. Jefferson seeks this relief upon the basis that his counsel at the original proceeding was ineffective and that the State and the court did not abide by the plea bargain to which his counsel allegedly told him the county attorney had agreed. We conclude that the files and records of the case do not show that Jefferson is entitled to no relief and that therefore, Jefferson was entitled to an evidentiary hearing and an attorney to represent him in the postconviction proceedings. Therefore, we reverse, and remand with directions.

In his motion for postconviction relief, Jefferson alleges that he is in prison as a result of his guilty plea, that he was sentenced to not less than 4 nor more than 5 years' imprisonment, and that his conviction is void or voidable under the U.S. and Nebraska Constitutions. He also alleges that pursuant to a plea agreement, he pled guilty to one count of shoplifting and dismissed an action against the J.C. Penney department store. He

alleges that in consideration, the State agreed to drop another, separate count of shoplifting and that the county attorney agreed to ask the court to give Jefferson 45 days' jail time. Jefferson's other allegations alluding to a plea bargain imply, but do not clearly allege, that through his counsel, Jefferson was led to believe that the county attorney agreed that Jefferson would receive only a 45-day jail sentence. Jefferson alleges that prior to being sentenced, he was told by his attorney to say no if asked if any deals had been made. In his motion, he also intersperses other facts with alleged legal authority and argument. These other facts were obviously intended to be further grounds for postconviction relief, but they fail to state grounds for such relief, and we do not feel obligated to list and explain them.

In his motion, Jefferson moved for an evidentiary hearing and for an attorney to represent him in the postconviction relief proceedings.

The record before us consists of Jefferson's motion and the court's denial thereof, as well as a bill of exceptions of the hearing on July 3, 1995, when Jefferson's guilty plea was accepted, and the hearing of November 8, 1995, when Jefferson was sentenced.

The record of the hearing made when Jefferson pled guilty does not contain an indication of any plea bargain but, rather, shows that Jefferson's counsel asked leave to withdraw the earlier plea of not guilty and enter a plea of guilty, without giving any indication of his client's motive for the change. The judge questioned Jefferson and established that he could read, write, and understand the English language and that he understood the full panoply of his constitutional rights. The judge asked Jefferson: "[H]as anyone forced you or required you to come and make your plea here today?" Jefferson answered "No." The judge also asked all of the questions usually asked by a judge to ascertain and establish that an offered plea is freely and voluntarily made, except he did not ask Jefferson if any promises were made to induce that plea. A clear factual basis was obtained from Jefferson himself.

The sentencing hearing was held more than 4 months later. The prosecutor did not address the court or make any recommendation. Jefferson and his attorney asked for leniency on the

basis that Jefferson had recognized his guilt and that he had recently reformed. No one mentioned any promises that might have been made to induce Jefferson's plea. The judge sentenced Jefferson to a term of 4 to 5 years' imprisonment with credit for the 14 days previously served.

In overruling Jefferson's motion for postconviction relief, the court found that the docket showed that on January 26, 1996, as a result of the plea and sentencing in this case, a third-offense shoplifting charge was dismissed on the motion of the county attorney. The court also found that Jefferson's allegations in his motion were conclusionary and without merit, and denied the motion without an evidentiary hearing. The court also denied Jefferson's motion for the appointment of an attorney.

## ASSIGNMENTS OF ERROR

Jefferson does not make a formal assignment of error in his pro se brief. However, he clearly assigns and argues in his brief that he was entitled to have the district court appoint him an attorney and that he was entitled to an evidentiary hearing. In view of our conclusion that Jefferson did raise a justiciable issue by his motion and that no attorney was appointed for him, we shall consider these two errors as properly assigned. Jefferson also argued a great many other issues which have so little merit that they need not be listed or discussed.

## STANDARD OF REVIEW

In a postconviction proceeding, a district court's determination that an evidentiary hearing is not required will not be reversed unless it is clearly wrong. See *State v. Lyman*, 241 Neb. 911, 492 N.W.2d 16 (1992).

## DISCUSSION

*Right to Evidentiary Hearing.*

Neither Jefferson's claim that his attorney told him that if he pled guilty the county attorney would ask the court to give him 45 days' jail time, nor the allegation that his attorney had "inculculated [sic]" a belief that the court would sentence him to 45 days' jail time if he pled guilty, is a conclusion, although the two statements are somewhat contradictory. In his brief, Jefferson does not point out any other allegations of material fact that might justify relief, and we have found none.

■ "Unless the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief," the court is required to hold a hearing. Neb. Rev. Stat. § 29-3001 (Reissue 1995).

In *State v. Maeder*, 240 Neb. 955, 486 N.W.2d 193 (1992), the defendant filed a motion for postconviction relief, alleging, among other things, that his counsel guaranteed that if he pled guilty, he would receive a certain sentence and that his attorney told him he had to respond affirmatively to questions by the trial court concerning the voluntariness of his guilty plea. The district court found that these allegations were effectively contradicted by the questioning of the trial court at the time that the defendant pled guilty, and it denied him an evidentiary hearing. In reversing that decision, the Supreme Court said that if the allegation concerning the voluntariness of his plea was true, "the record does not conclusively establish that the defendant's guilty plea was made knowingly and voluntarily." 240 Neb. at 957, 486 N.W.2d at 195. The Supreme Court also concluded that the trial court's questioning of the defendant concerning the voluntariness of his plea did not effectively contradict the defendant's allegation that he answered affirmatively to questions concerning the voluntariness of his plea because his attorney instructed him to do so. The Supreme Court held that an evidentiary hearing was required to determine the validity of the defendant's allegation.

The *Maeder* court cited *State v. Ford*, 198 Neb. 376, 252 N.W.2d 643 (1977). In that case, the court asked the defendant if any threats or promises were made to get him to plead guilty, and because the county attorney interrupted the defendant, the record did not show an answer to the court's question. The *Ford* court reversed, because the record did not affirmatively show that the defendant pled guilty understandingly and voluntarily. In making this ruling, the *Ford* court cited and relied upon an American Bar Association standard requiring the trial court to personally determine whether any promises or threats were used to obtain the plea. This holding is somewhat weakened by the fact that in *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986), the court disapproved all previous statements by it which adopted the American Bar Association's standards for

criminal justice. However, it recognized these standards as good and useful.

In postconviction cases since *Irish*, the Supreme Court has looked at the record made at the time the plea was accepted to ascertain if the record affirmatively shows that at that time, the defendant stated that no promises or threats were made except those embodied in the plea bargain. *Maeder* is one of these cases.

In *State v. Rivers*, 226 Neb. 353, 411 N.W.2d 350 (1987), and in *State v. Busse*, 186 Neb. 99, 181 N.W.2d 124 (1970), the Supreme Court concluded that the searching and clear statements made by the court and counsel left no doubt that there were no promises or inducements which could have made the pleas involuntarily or unknowingly made.

In *State v. Scholl*, 227 Neb. 572, 419 N.W.2d 137 (1988), the defendant alleged that he was entitled to an evidentiary hearing on his claim of ineffective assistance of counsel. Specifically, the defendant alleged that he had pled guilty based on a plea bargain executed by his attorney, in which the county attorney agreed not to prosecute the defendant as a habitual criminal, when in fact the defendant could not have been convicted of such a crime. The Supreme Court affirmed the district court's judgment and held that the defendant was not entitled to an evidentiary hearing. In affirming the denial of an evidentiary hearing, the *Scholl* court stated:

If the dialogue which is required between the court and the defendant whereat, as here, the court receives an affirmative answer as to whether the defendant understands the specified and full panoply of constitutional rights; whether the defendant is fully aware of his surroundings; whether defendant is satisfied as to counsel's services and representation; *and whether it is true that defendant was not improperly influenced by threats or promises*; and whereat the court is further told by the defendant of facts which leave no doubt as to defendant's guilt and the voluntary and knowledgeable entry of a plea of guilty, all done during the sanctity of a full and formal court proceeding, is to be impugned by a mere recantation made after the doors of the prison clang shut, we are wasting our time and that of

the trial judges, making a mockery out of the arraignment process.

(Emphasis supplied.) *Id.* at 580, 419 N.W.2d at 142.

■ From the above cases, we conclude that while a plea of guilty may be valid when the judge taking the plea does not ask the defendant if any promises were made to induce that plea, nonetheless, in postconviction proceedings where the defendant alleges that his or her plea was induced by some promise, the court must hold an evidentiary hearing on the issue unless the record conclusively shows that the plea was not induced by any promises, except those included in the plea bargain. Usually the record will not conclusively show that no such promise was made unless the judge addresses the defendant personally on the subject—a good reason for the trial court to specifically discuss the matter with the defendant.

In the instant case, Jefferson alleges that he was promised that the county attorney would ask the court to drop another charge and give Jefferson 45 days' jail time. Prior to accepting the plea of guilty, the judge did not ask Jefferson if any promises were made to induce the plea, but did ask the related question of whether Jefferson was forced or required to so plead. The allegation that his attorney told him prior to sentencing to say no if asked if any deals had been made is immaterial under the facts of this case, because Jefferson was not asked about any deals.

The record shows that the judge did not ask Jefferson if any promises were made, and there is no other evidence in the record showing that no such promises were made. Therefore, the files and records do not conclusively establish that Jefferson's plea was knowingly and voluntarily made, and we reverse the district court's decision denying Jefferson an evidentiary hearing and remand the cause for an evidentiary hearing.

*Right to Court-Appointed Counsel.*

■ Jefferson asked the court to appoint an attorney to represent him in connection with an evidentiary hearing. The trial court denied that request. "Under the Nebraska Postconviction Act, it is within the discretion of the trial court as to whether counsel shall be appointed to represent the defendant" in post-

conviction proceedings. *State v. Parmar*, 249 Neb. 462, 464, 544 N.W.2d 102, 104 (1996). "Under Nebraska case law, where the record shows that a justiciable issue of law or fact is presented to the court in a postconviction action, an indigent defendant is entitled to the appointment of counsel." *State v. Victor*, 242 Neb. 306, 315, 494 N.W.2d 565, 572 (1993). However, if "the assigned errors in the postconviction petition before the district court were either procedurally barred or without merit," the action does not contain a justiciable issue. *Id.* If the record had shown that Jefferson was entitled to no relief, there would be no justiciable issue of law or fact. We have concluded that there is an issue of fact to litigate at an evidentiary hearing. It follows that the district court erred in not appointing Jefferson counsel, and we direct the court to appoint Jefferson counsel to represent him upon remand.

REVERSED AND REMANDED WITH DIRECTIONS.